UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

Plaintiff,

v.

SALLY GIBSON,

Defendant.

NO. CR-03-151-RHW
CV-07-192-RHW

**ORDER DISMISSING DEFENDANT'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY**

Before the Court is Defendant's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Ct. Rec. 319).

On July 28, 2004, a jury found Defendant guilty of Conspiracy to Commit Wire Fraud, and eleven counts of wire fraud. On March 3, 2005, Defendant was sentenced to a 30 month term of incarceration; a 3 year term of supervised release; a $100 special penalty assessment; and restitution in the amount of $264,406.97.

Defendant appealed her conviction and sentence to the Ninth Circuit Court of Appeals. On August 16, 2006, the Circuit affirmed her conviction and sentence. The Circuit found that a rational trier of fact could have found the elements of the offenses proven beyond a reasonable doubt; upheld the district court's refusal to sever the trial; upheld the district court's decision to admit evidence of the two co-defendants' guilty pleas; upheld the district court's decision to admit certain documentary and testimonial evidence; ruled that the jury was properly instructed regarding the conspiracy charge; upheld the district court's determination of the amount of loss suffered by the victims of the conspiracy; and upheld the sentence of 30 months incarceration as reasonable. Additionally, the Circuit rejected Defendant's arguments that the Court's comments at

sentencing legally negated or even affected the jury's verdict or the Court's sentence, and that the Government was required to establish through in-court identification that Defendant was the person who committed the charged offenses. The mandate was issued on January 1, 2007. Defendant sought discretionary review with the United States Supreme Court, which was denied.

On June 13, 2007, Defendant filed her Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Ct. Rec. 319). The motion is over two-hundred pages. In it, Defendant presents seventy-one grounds as a basis for granting the motion. The grounds can be placed in eight categories: ineffective or inadequate assistance of counsel; conflict of interest; failure to make motions; failure to object at trial; other deficiencies in trial performance; prosecutorial misconduct; abuse of power and other grounds.

Defendant's positions regarding each of her grounds are set forth below:

**1. Ineffective Assistance of Counsel**

Ground 4 - Defendant's counsel made false promises, misrepresentations and misleading advisements. Defendant asserts that her counsel promised that Defendant's *pro se* motions would be presented by counsel and encouraged her to plea bargain. She also asserts that her counsel failed to present any written evidence on her behalf.

Ground 6 - Defendant's counsel failed to focus the jury on the facts given to him in discovery as well as failed to use exculpatory documentation.

Ground 8 - Defendant's counsel refused to allow her to replace him in September 2003, and after she attempted to replace him, he did not adequately represent her due to personal animosity.

Ground 16 - Defendant's counsel failed to develop or pursue an identifiable defense strategy and he convinced Defendant not to take the stand.

Ground 42 - Defendant's counsel failed to present evidence that Defendant had absolutely no intentions to commit wire fraud.

Ground 44 - Defendant's counsel failed to present evidence in response to the

mass marketing evidence that all advertisement put out by a realtor must have the broker's phone number in the advertisement because the agent is directly under the supervision of the real estate broker.

Ground 45- Defendant's counsel failed to properly present to the jury the applicable real estate laws, in that the broker is responsible for the actions of the agent.

Ground 49 - Defendant's counsel excluded Defendant from conferring with or about witnesses. Defendant asserts that she would confer with her counsel about particular witnesses, yet her counsel refused to ask any of the questions that Defendant believed would have been helpful to her defense.

Ground 53 - Defendant's counsel refused to return lengthy research projects conducted by Defendant that would indicate that the alleged practice was widespread. Defendant's counsel refused to present the research to the jury.

Ground 55 - Defendant's counsel misrepresented to Defendant that if she did not testify, the statement she made to the FBI would not be admitted. Defendant's counsel coerced Defendant into not taking the stand.

Ground 56 - Defendant's counsel scheduled four vacations during the proceedings, which caused Defendant to be sentenced after *Blakely v. Washington* was decided and which caused Defendant's counsel to be unprepared.

Ground 57 - Defendant's counsel withheld evidence that would prove that Defendant was a victim of Century Mortgage. Defendant financed a purchase of a home through Century Mortgage and alleged that Century Mortgage misrepresented facts to her about the nature of the loan.

Ground 58 - Defendant's counsel silenced witnesses and refused to use exculpatory evidence.

Ground 59 - Defendant's counsel failed to investigate a possible defense; failed to have a strategy to best serve Defendant; failed to allow Defendant to obtain new counsel; and failed to impeach prosecution witnesses.

**2. Conflict of Interest**

Ground 43 - Defendant's counsel allowed co-Defendant's counsel to run the case for his client and Defendant's counsel took a second seat to the detriment of her defense. Consequently, all exculpatory evidence in favor of Defendant was not used in her defense.

Ground 54 - Defendant's counsel subjugated her best interests in favor of the best interest of her co-Defendant. Defendant's counsel failed to present exculpatory evidence.

Ground 68 - Defendant's counsel's loyalty was to the co-Defendant and not to Defendant. Co-Defendant's counsel coerced Defendant into not testifying. Defendant's counsel permitted co-Defendant's counsel to lead, control, and defend in the best interest of his client and to the detriment of Defendant's defense.

**3. Failure to Make Motions**

Ground 1 - At sentencing, Defendant's counsel failed to object to prosecutorial misconduct in misrepresentation through lack of knowledge; lack of familiarity of exhibits that were exculpatory in benefit to and of Defendant. Defendant asserts that her counsel was ineffective at sentencing because he allowed the prosecution to present a list regarding certain residences. Defendant argues that the failure to object allowed the Court to unknowingly assume these were examples of similar loans.

Ground 3 - Defendant's counsel failed to subpoena witnesses for the defense of Defendant in a timely manner. Defendant asserts that her counsel refused to call Monsignor Peareson and belatedly took the subpoenas to the U.S. Marshals Service, which caused the witnesses to receive the subpoenas late, which caused witnesses to be angry.

Ground 7 - Defendant's counsel falsely promised to present *pro se* motions.

Ground 52 - Defendant's counsel failed to make *pro se* motions.

Ground 60 - Defendant's counsel failed to move for dismissal of the indictment.

Ground 70 - Defendant's counsel failed to file *pro se* motions.

**4. Failure to Make Objections at Trial**

Ground 5 - Defendant's counsel failed to object during trial and failed to object to jury instructors. Defendant asserts that her counsel had a lack of understanding of real estate transactions and real estate procedures, which prevented him from objecting to jury instructions.

Ground 63 - Defendant's counsel failed to object to the Government's presentation of evidence that Defendant told Mashtare/Lamb that the seller was a divorced couple and failed to cross-examine Mashtare regarding who requested the check for $14,000.

Ground 71 - Defendant's counsel failed to object to and failed to present mitigating evidence regarding the Government's disparaging character assassination, constant inference to Defendant's bad character and propensity for bad character.

**5. Deficiencies in Trial Performance**

Ground 2 - Defendant's counsel made incompetent closing arguments. Defendant asserts that her counsel failed to be familiar with critical exculpatory evidence and failed to remind or focus the jury on the evidence. Defendant takes issue with her counsel's presentation and lack of loyalty.

Ground 9 - Defendant's counsel was inadequately prepared for trial. Defendant asserts that her counsel's performance was ineffective because he failed to secure independent medical and mental testimony to present at trial.

Ground 10 - Defendant's counsel failed to locate and call significant witnesses, specifically certain expert witnesses Defendant identified through newspaper articles, as well as her brokers.

Ground 11 - Defendant's counsel failed to present documentation during direct and/or cross-examination or to subpoena documents to defend Defendant. Specifically, Defendant asserts her counsel's performance was deficient when he failed to present an "Inspection by Buyer" form signed by victim Jessica Lamb that indicated they had completed their inspection, and failed to present documentation from Cathy Patrick that

would indicate that Ronald Burger was instructing Defendant to rewrite the E.M.A. page per his instruction. Defendant's counsel failed to cross-examine and impeach Cathy Patrick.

Ground 12 - Defendant's counsel failed to prepare witnesses adequately. Defendant asserts her counsel's performance was deficient when he failed to ask pertinent questions of the witnesses and when he failed to skillfully impeach witnesses by use of discovery.

Ground 13 - Defendant's counsel was deficient in jury selection. Defendant asserts her counsel's performance was deficient when he allowed particular jurors to remain on the jury to which Defendant objected.

Ground 14 - Defendant's counsel failed to utilize statements in discovery to impeach prosecution witnesses.

Ground 15 - Defendant's counsel waived cross-examination of certain prosecution witnesses.

Ground 17 - Defendant's counsel made a poor opening statement.

Ground 18 - Defendant's counsel was inattentive during trial. Defendant maintains that counsel, on occasion, had to be called by name several times before responding. Defendant asserts that her counsel failed to object to a witnesses' statement when she indicated to him that the witnesses had said something inaccurate.

Ground 19 - Defendant's counsel failed to instruct the jury that it was a realtor or real estate agent's requirement to advertise to obtain a buyer for a property. He failed to present evidence to the jury that there was no intent to harm, but to help the buyer.

Ground 48 - Defendant's counsel failed to properly impeach witnesses, specifically, Crisler and Thomas.

Ground 51 - Defendant's counsel failed to use data about the credentials of Frank Burger, Jr., a witness.

Ground 61 - Defendant's counsel failed to impeach witnesses and argue that Nathan Oulman was not an unwitting buyer of real estate property.

Ground 62 - Defendant's counsel failed to connect the dots and challenge false testimony regarding the Erickson transaction.

Ground 64 - Defendant's counsel failed to adequately cross examine regarding the Tinn transaction.

Ground 65 - Defendant's counsel inadequately presented real estate practices and procedures and failed to focus presentation on the actual contract signed by each willing buyer. Defendant's counsel failed to challenge the restitution amounts.

Ground 66 - Defendant's counsel failed to adequately impeach witnesses.

Ground 67 - Defendant's counsel failed to present exculpatory evidence, including MLS data sheets, tax full reports, title reports, and signed inspection reports.

**6. Prosecutorial Misconduct**

Ground 20 - Prosecutorial misconduct in suppressing favorable witness evidence for the accused by lying to the Court and indicating that the witness was not available. Specifically, Defendant indicated that Vickie Kerr was available to testify but she was not permitted because she refused to sign a document which misrepresented her statement.

Ground 21 - Prosecutorial misconduct in citing case law that had no relevant correlation to the case.

Ground 22 - Prosecutorial misconduct in misleading the jury as to the Defendant having prepared documents of Lisa Cooper for bank qualification of employment. Defendant maintains that Ms. Cooper lied and the document did not exist.

Ground 23 - Prosecutorial misconduct in arbitrary, capricious and grossly excessive perjured testimony presented to the grand jury and the petit jury.

Ground 24 - Prosecutorial misconduct in knowingly using the false testimony of Jessica Lamb and Richard Mashtare.

Ground 25 - Prosecutorial misconduct for allowing collusion between witnesses. Defendant asserts that the Government permitted the witnesses to compare, rehearse, and share testimony as well as cajole and converse about their testimony before taking

the witness stand.

Ground 26 - Prosecutorial misconduct in knowingly using false evidence and corruption of the truth-seeking process. Defendant asserts that the Government failed to correct false testimony of the prosecution's witnesses, specifically, Jessica Lamb.

Ground 27 - Prosecutorial misconduct in releasing or leaking the case to the media in order to procure a conviction.

Ground 28 - Prosecutorial misconduct in releasing information that precluded Defendant from receiving a fair trial and from obtaining gainful employment.

Ground 29 - Prosecutorial misconduct in misrepresenting availability of witnesses.

Ground 30 - Prosecutorial misconduct in giving inducements for testimony which the Government knew was false, specifically, Jessica Lamb, Lisa Cooper, Sherene Thomas, and Cathy Patrick.

Ground 31 - Prosecutorial misconduct in not indicting other persons.

Ground 32 - Prosecutorial misconduct in coercing witnesses to testify falsely.

Ground 33 - Prosecutorial misconduct by failing to correct false testimony.

Ground 34 - Prosecutorial misconduct by bargaining for testimony and giving incentives for false testimony.

Ground 35 - Prosecutorial misconduct in colluding with defense counsel regarding a phone conversation in which counsel for the Government indicated that he would not argue that Defendant was a supervisor or manager.

Ground 37 - Prosecutorial misconduct by making disparaging remarks about Defendant to the jury and causing the jury to dislike, hate and find Defendant repugnant.

Ground 39 - Prosecutorial misconduct in being grossly negligent and intentionally presenting false statements.

Ground 47 - Prosecutorial misconduct in presenting erroneous information to the grand jury and withholding evidence.

Ground 50 - Prosecutorial misconduct in failing to call witnesses, specifically, Vickie Kerr.

**7. Abuse of Power**

Ground 36 - Abuse of power on the part of the prosecutor due to discriminatory enforcement of the law and not indicting all parties who were participants in the transactions.

Ground 38 - Government engaged in piling on charges and engaged in gross misrepresentations at the sentencing.

Ground 46 - Counsel for the Government was using prosecution for personal and political gain.

**8. Other Grounds**

Ground 40 - Coercion. FBI agents failed to permit Defendant to understand or fully know the consequences of preparing a written statement.

Ground 41- Misconduct of FBI agents when they falsely promised to talk to the Judge regarding Defendant's involvement and led Defendant to believe that she was working with them and part of the team. Defendant asserts they falsely promised that she would not be arrested or go to jail.

Ground 69 - Culmination of factors leading to Defendant not receiving a fair trial.

## DISCUSSION

Under 28 U.S.C. § 2255, a federal prisoner may move the court to vacate, set aside, or correct his or her sentence on the grounds that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such sentence; (3) the sentence was not authorized by law; or (4) issues of collateral attack. "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney." 28 U.S.C. § 2255.

Pursuant to Rule 4 of the Rules Governing Section 2255 Proceedings for the United States District Courts ("Rule 4"), the Court must independently examine a §

2255 motion to determine whether summary dismissal is warranted. Dismissal is appropriate if the movant's allegations, "viewed against the record, either fail to state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal." *Marrow v. United States*, 772 F.2d 525, 526 (9th Cir. 1985). If it plainly appears from the record that Petitioner is not entitled to relief, the Court shall issue an order summarily dismissing the cause of action. Rule 4. If, on the other hand, the Court determines that Defendant may be entitled to relief, the Court shall enter an order requesting the United States Attorney to file an answer. *Id.*

Defendant is proceeding *pro se*. Therefore, the Court will liberally construe Defendant's pleadings. *Solis v. County of Los Angeles*, 514 F.3d 946, 957 n.12 (9th Cir. 2008).

**1. Ineffective Assistance of Counsel Claims**

To establish ineffective assistance of counsel, Defendant must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced her defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *United States v. Fry*, 322 F.3d 1198, 1200 (9th Cir. 2003). To satisfy *Strickland's* first prong, the acts or omissions must fall "outside the wide range of professionally competent assistance." *Id.* at 690. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. A deficient performance prejudices a defense if there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* *Strickland's* second prong thus "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

The Court starts from the presumption that Defendant's counsel is "competent to provide the guiding hand that the defendant needs." *United States v. Cronic*, 466 U.S. 648, 658 (1984); *see also Soppahthavong v. Palmateer*, 378 F.3d 859, 868 (9th Cir.

2004), *quoting Strickland*, 466 U.S. at 690 ("A court must scrutinize counsel's performance deferentially: '[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'"). Moreover, Defense counsel has wide latitude in deciding how best to represent a client. *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). The reasonableness of counsel's chosen trial strategy depends critically "on informed strategic choices made by the defendant and on information supplied by the defendant." *Strickland*, 466 U.S. at 691.

The Court has carefully reviewed all of Defendant's claims of ineffective assistance of counsel. Many of the claims focus on Defendant's disagreement with the strategic choices that her counsel made and thus, cannot be the basis for a claim for ineffective assistance of counsel.

Defendant criticizes her counsel's performance in opening and closing arguments. She does not point out any specific deficiencies. The Court has reviewed the statements and does not find that counsel's opening and closing statements fall outside the range of professional competence.

Defendant criticizes her counsel's failure to present certain motions on her behalf, the failure to present certain evidence on her behalf, the failure to adequately cross-examine, and the failure to make certain objections at trial. These all address Defendant's counsel's chosen trial strategy. Defendant has not overcome the presumption that her counsel was competent and that these choices were unreasonable.

Many of the issues presented in Defendant's motion were explicitly explored at trial on July 26, 2004. On that date, the Court held a colloquy with Defendant regarding her dissatisfaction with her counsel's performance. Defendant was particularly upset because she felt that certain witnesses were lying on the stand, and her counsel was not doing anything to either prevent the lying or expose the lying. The Court explained that while frustrating, there is nothing one can do to prevent a person from lying on the stand, and ultimately it is up to the jury to determine whether to believe the person. The

Court also explained that Defendant's focus on certain inconsistencies in the testimony may be counterintuitive to her defense. The Court also addressed Defendant's request for new counsel. As such, Defendant's argument that her counsel precluded her from making such a motion is without merit.

Additionally, in many of the grounds, Defendant complains that her counsel failed to call witnesses on her behalf. Her counsel did attempt to call witnesses, but the Court determined that they were not relevant to the charges. For instance, her counsel attempted to call Monsignor Peareson as a character witness to testify that Defendant routinely donated money to charities. The Court ruled that his testimony was not relevant. Moreover, whether to call certain witnesses is left to the professional judgment of counsel and Defendant has not shown that her counsel's failure to call certain witnesses fell outside the range of professional competent assistance. As such, Defendant's claims for failing to call witnesses on her behalf are without merit.

It is obvious that Defendant was unhappy with her counsel's performance at trial. However, being unhappy does not rise to the level of a constitutional violation unless the Defendant can show that the counsel's performance falls outside the wide range of professionally competent assistance and show that any errors were so serious that she was not afforded counsel as guaranteed by the Consititution. The Court was able to observe Defendant's counsel's performance throughout the entire proceedings. It was adequate, competent, and professional. Moreover, Defendant has not shown that but for any of the alleged deficiencies, there is a reasonable probability the results of the proceeding would have been different. The Court finds that Defendant has failed to state a claim for ineffective assistance of counsel.

**2. Prosecutorial Misconduct and Abuse of Power Claims**

To establish a claim for prosecutorial misconduct, Defendant must show that the prosecutorial misconduct so infected the trial with unfairness as to make the resulting conviction a denial of due process. *United States v. Ratigan*, 351 F.3d 957, 964 (9th Cir. 2003).

Here, Defendant has procedurally defaulted on any claims of prosecutorial misconduct because she failed to raise the issue at trial or on direct appeal. *Id.* "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.' " *Id.* (citations omitted). "[T]he mere fact that counsel failed to recognize the factual or legal basis for the claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Id.* (citation omitted). Defendant has not met her burden of showing cause and actual prejudice or actual innocence.

Moreover, the Court finds that Defendant's claims of prosecutorial misconduct and abuse of power are without merit. As such, the Court finds that Defendant fails to state a claim for prosecutorial misconduct and abuse of power.

**3. Right to Testify Claims**

Dispersed in many of the claims are statements by Defendant that she was coerced into deciding not to testify at her trial.

"[A] defendant in a criminal case has the right to take the witness stand and testify in his or her own defense." *Rock v. Arkansas*, 483 U.S. 44, 51 (1987); *United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993). The right is personal, and "may only be relinquished by the defendant, and the defendant's relinquishment of the right must be knowing and intentional." *Joelson*, 7 F.3d at 177. "[W]aiver of the right to testify may be inferred from the defendant's conduct and is presumed from the defendant's failure to testify or notify the court of his desire to do so." *Id*. A defendant who wants to reject his attorney's advice and take the stand may do so "by insisting on testifying, speaking to the court, or discharging his lawyer." *Id.* When a defendant remains "silent in the face of his attorney's decision not to call him as a witness," he waives the right to testify. *United States v. Nohara*, 3 F.3d 1239, 1244 (9th Cir.1993). The Court has no duty to advise the defendant of her right to testify, nor is the court required to ensure that an on-the-record wavier has occurred. *Id.*

The Court on two separate occasions discussed with Defendant her decision regarding whether to testify on her own behalf. In the end, Defendant did not take the stand. Defendant waived her right to testify and is precluded from now arguing that her counsel's performance was deficient because he did not permit her to take the stand, or arguing that her constitutional right to testify was violated.

**4. Other Grounds**

Defendant asserts that the FBI agents coerced her into writing a statement. Defendant failed to raise this issue on appeal; accordingly, she has procedurally defaulted on this claim.

**5. Conclusion**

The Court has carefully considered each of the grounds Defendant has presented in support of her § 2255 motion. Many of the grounds are duplicative and present common themes. Pursuant to Rule 4, the Court has independently examined her motion and has found that dismissal is appropriate.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant's Motion Under 28 U.S.C. § to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Ct. Rec. 319) is **DISMISSED**.

2. Defendant's Motion to Set Hearing for 2255 Motion/(Coram Nobis Petition) (Ct. Rec. 337) is **DENIED**.

3. Judgment is entered in favor of Plaintiff and against Defendant.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to enter this order, furnish copies to counsel, and close the file**.**

**DATED** this 21st day of November, 2008.

*S/ Robert H. Whaley*

ROBERT H. WHALEY
Chief United States District Judge

Q:\CRIMINAL\2003\Spokane Fraud\GIBSON\rule 4.wpd